**HENRY R. KAUFMAN, P.C.**
ATTORNEYS AT LAW
60 EAST 42ND STREET
47TH FLOOR
NEW YORK, NEW YORK 10165

OFFICE: (212) 880-0842
MOBILE: (914) 589-7963
FAX: (212) 682-1965
HKAUFMAN@HRKAUFMAN.COM
WWW.HRKAUFMAN.COM

*Via Email*
Andrew C. Phillips, Esq.
Clare Locke LLP
10 Prince Street
Alexandria, VA 22314

Re: Morrison v. Langrick

Dear Andy:

  Following our "meet and confer" last week, and in a good faith effort to resolve the discovery issues between us without court involvement, and in particular to obviate the need for your threatened motion to compel, we have now conferred with Ms. Morrison and are prepared to offer the following terms of compromise.

  Essentially, we can confirm, now with our client's approval, that we would be prepared to amend our prior discovery responses to clarify that, in her case-in-chief (as carefully limited in the *ad damnum*), Ms. Morrison is only seeking damages from February 12, 2018 forward (the date of the first threat of a defamation action against her) and that, as a further accommodation, we would be prepared to provide documents and information covering a year before that date – specifically, January 1, 2017 to the present. In return, you would agree not to make the threatened motion to compel.

  As we discussed in our telephone conversation, the discovery you are threatening to compel is – in our view – both premature and overbroad because the *ad damnum* clause of our Declaratory Judgment complaint is limited to damages arising from your client's threat of a slander action based on her January 2, 2018 telephone call to Bloomberg, accompanied by his demand for an unconscionable – indeed extortionate – NDA, and then combined with the overhanging threat of still further defamation litigation anytime our client might speak or write about her horrific, life-changing experience with Mr. Langrick in May, 2005.

Accordingly, as we also explained in last week's call, upon careful review of certain of our prior disclosures, we have come to realize that, despite Ms. Morrison's genuine past and continuing psychological distress, and the upending of her life personally and professionally, as a result of the events of May, 2005, the actual relief sought in the case-in-chief is limited to damages arising as a result of Langrick's threats, which began in early 2018. Therefore, the responses we made were overly broad, although accurately reflecting what Ms. Morrison's went through.

While we still believe that any discovery is premature and wasteful, in addition to being personally intrusive, until the motion to dismiss is decided, after discussion with Ms. Morrison we would agree to give you authorizations for psychological records and recognize your limited right to her employment records, for the roughly one year prior to Mr. Langrick's first threat of litigation, through to the present, if you agree to withdraw your pending far broader requests for a dozen or more years of earlier records.

In our phone call, you pointed out that the Declaratory Judgment complaint referenced Ms. Morrison's psychological suffering as a result of Mr. Langrick's behavior (and, we might add that, in his Answer and Counterclaims, Mr. Langrick has himself admitted and graphically detailed sexually-assaultive behavior that we believe would have given any 19 year old student good grounds to feel that way). To the extent this requires explanation, we felt that it was necessary to explain the traumatizing events – and their effects – in detail so that the court could understand why Ms. Morrison formed the good faith belief that her statements were true and were also and in any event constitutionally-protected statements of opinion, and/or qualifiedly privileged.

Nevertheless, as reflected in her limited *ad damnum*, Ms. Morrison would frankly rather forgo seeking damages for harm suffered prior to 2018 than endure further damages and abuse by handing over and opening up the most intimate and intrusive details of her life's history to the man she – justifiably – considers to have raped and sexually assaulted her.[1] But, it was the threat of litigation and the threat to impose a draconian NDA in lieu of litigation that forced her to seek the declaratory relief that is the primary component of her case in chief.

As we explained in our call, for the same reason as we believe that the medical information you requested inappropriately encompasses years prior to the events starting in 2018 for which Ms. Morrison seeks damages, we believe that our initial disclosures and discovery

---

[1] And please, I am respectfully requesting, do not offend our client – and I would expect the Court as well – by claiming it to be some kind of strategic "pressure testing," through the discovery process, that has led our client to forego her broader damage claims. If there was any "pressure testing" in this tragic situation, that pressure was imposed by your client's out-of-control behavior back in May 2005, the trauma of which still carries over for Ms. Morrison more than a dozen years after the events at Dartmouth and to this day.

responses with respect to employers were overly broad, as were certain responses to questions regarding Ms. Morrison's previous writings, to the extent those were published before January 1, 2017. We understand that you have already subpoenaed many of the employers identified. As part of the compromise we are proposing, we would expect you to promptly withdraw those subpoenas relating to employment and writing during the earlier, excluded time periods (and send us proof that you have done so). If you decline to do so, we reserve our right to bring that to the court's attention either in our opposition to any motion to compel that you may bring, or in a separate motion if we determine that is appropriate. In the meantime, however, we ask you to immediately share with us all responses that you have received to those subpoenas and to continue to do so as you receive additional responses.

With regard to the remainder of the production, as well as the massive video files concerning, among other things, consultation with spiritual leaders and other victims of sexual assault, as we mentioned, we are in the lengthy and time consuming process of trying to determine which, if any, sections of those are relevant to the post-2018 threats at issue in the case.

You have also agreed to send us a proposed Protective Order concerning certain of Ms. Morrison's disclosures.

With regard to the request for admissions that you served upon us, and we indicated to you last week, although they are not yet due (having been served only on March 14), we are working on a formal response. In any event, as we told you, we will essentially be confirming that Ms. Morrison made the statements at issue.

And finally, as we mentioned, we would reserve our right to take exception to any objections you have articulated in the past, or will articulate in the future, to our discovery demands.

Please confirm that the terms outlined above are acceptable so we can, in turn, finish preparing the amended disclosures we have proposed and get them to you promptly.

                                                Very truly yours,
                                                      /s/
                                              Henry R. Kaufman P.C.
                                              Attorneys for Monica Morrison

Cc:    Carol A. Schrager, Esq.
          Shannon B. Timmann, Esq.