UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MONICA MORRISON,

                    Plaintiff,

        -against-

ROBERT LANGRICK,

                  Defendant.

-------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
18-CV-06127 (CBA) (RML)

**AMON, United States District Judge:**

## INTRODUCTION

This case arises out of a 2005 sexual encounter at Dartmouth College between Plaintiff and Counter Claim Defendant Monica Morrison and Defendant and Counter-Claimant Robert Langrick. Morrison characterizes the encounter as rape; Langrick maintains that it was consensual sex and has brought defamation counterclaims against Morrison, based on her more recent statements about the encounter. Before the Court is Langrick's motion to dismiss Morrison's amended complaint, which Morrison brings under the Declaratory Judgment Act, for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). For the reasons stated below, Langrick's motion is GRANTED with prejudice.

## BACKGROUND

### I.     Factual Background

The following facts are taken from Morrison's amended complaint, (ECF Docket Entry ("D.E.") # 70 ("Am. Compl.")), and are presumed to be true, as they must be at this stage of litigation.

**A.  The 2005 Encounter and Subsequent Investigation**

In May 2005, Langrick, then a graduate student at Tuck School of Business, sexually assaulted Morrison, then an undergraduate student at Dartmouth College, in her dorm room following a fraternity party.  (Am. Compl. ¶ 4; see also id. ¶¶ 30–60 (making more detailed allegations regarding the 2005 encounter).)  Morrison reported the assault at the time, but "in a far different legal and social climate, the police declined to prosecute Mr. Langrick."  (Id. ¶¶ 5, 7.) For his part, Langrick contends that the Hanover Police Department "'conclusively determined' [that he] committed 'no wrongdoing.'"  (Id. ¶ 71.)  Morrison alleges that "[n]othing could be further from the truth," adding that the police thought the incident was "complicated . . . by the presence of drugs, the handling of some cash [Langrick] left behind after the assault in [Morrison's] room" and Morrison's "'heavy impairment due to alcohol,' and her confusion about what happened to her."  (Id. ¶¶ 72, 77–78 (emphasis in original).)  "In any event, the bottom line to be drawn from the final police report, was surely not . . . that [Langrick] was 'conclusively' exonerated in the sexual assault investigation.  Far from it.  He admitted to (or did not dispute because he largely could not remember) many of his highly-questionable activities."  (Id. ¶ 82 (emphasis in original).)

**B.  The 2018 Phone Call to Langrick's Employer**

"Over the ensuing dozen years, [Morrison] largely kept her secret, except for revelations in therapy and privately to confidants."  (Id. ¶ 10.)  "Recently, inspired in part by the #metoo movement, [Morrison] finally chose to confront the perpetrator of the abuse she had suffered." (Id. ¶ 12).  To that end, Morrison "did some research about" Langrick and discovered that his "executive position at the time [at Bloomberg] required him to visit colleges and universities and to potentially interact with students on those campuses."  (Id. ¶¶ 13–14.)  Out of concern for those

students, Morrison "placed a single, brief, telephone call in which she truthfully alerted [Bloomberg's] Human Resources Department to the 2005 incident." (Id. ¶ 15.)

### C. Langrick's "Second Assault" of Morrison

Morrison alleges that "ever since that first telephone call to [Langrick's] employer, [Morrison] is being victimized once again, in a second attempted assault by Mr. Langrick, in the form of a specific, open and outstanding threat of punitive legal action against her for having the temerity to begin speaking out truthfully about the 2005 incident." (Id. ¶ 17.) Specifically, "with the threat of a slander action as leverage, [Langrick] was insisting that [Morrison] enter into an overreaching and unconscionable "Settlement Agreement" that would have required her to read from the undeniably fictional script of complete exoneration that [Langrick] had conjured up, based on the false claim that he had been 'conclusively determined' to have been guilty of 'no wrongdoing' in the 2005 incident." (Id. ¶ 98.) The proposed Settlement Agreement also "purport[ed] to impose a huge penalty on Ms. Morrison—of $500,000 in what the agreement itself referred to as a 'Liquidated Damages Award'—not once, but each and every time Ms. Morrison [who is now a writer], might say or write something that did not conform to [Langrick's] false narrative of the incident of sexual assault—also for the rest of her life." (Id. ¶¶ 90, 100.) On May 18, 2018, Morrison's counsel wrote an email to Langrick's counsel, rejecting the proposed Settlement Agreement on the grounds that Morrison would "'never trade away her right to truthfully recount the facts of her life'—including the facts regarding Mr. Langrick's sexual assault in May 2005." (Id. ¶ 102.)

### D. Amended Claims for Relief

As to the fist claim for relief, Morrison "does not challenge the original 'NDA,' as [Langrick] has now made clear, in the context of this litigation, that he is no longer proposing, or

seeking to enforce, that unexecuted Settlement Agreement." (Id. ¶ 107.) Rather, Morrison alleges

that Langrick's "plan in connection with his three defamation counterclaims in the pending action

still has essentially the same goal [as the original NDA]—to silence [Morrison] from truthfully

recounting her story into the future—indeed for the rest of her life." (Id. ¶¶ 113–115.) Morrison

further alleges that through "filings in this action, it continues to seem clear that, on information

and belief, [Langrick] still intends, if not restrained, to insist on silencing Ms. Morrison from

making future statements about him, and the incident of May 2005, including statements that are

merely 'disparaging,' albeit true." (Id. ¶ 116.) "Moreover, at his recent deposition, Mr. Langrick

refused to respond directly to questions concerning his plans for future litigation against Ms.

Morrison—even if the publication at issue were to contain only truthful statements, consistent with

Mr. Langrick's admissions to the police in 2005, and consistent with the many factual admissions

contained in his own pleadings in this action." (Id. ¶ 117.) Morrison therefore seeks "a declaration

that the 'settlement' terms [Langrick] has previously demanded, is currently demanding, and has

refused to say he will not continue to demand or to seek in the future, are unlawful, unconscionable,

unenforceable and unconstitutional, in clear and <u>current</u> violation of [Morrison's] First

Amendment rights." (Id. ¶ 128 (emphasis in original).)

As to the second claim for relief, Morrison alleges that Langrick "has been actively, albeit

baselessly, asserting—in the past, present and for the future—the right to censor and/or to punish

[her] truthful speech or writings on a subject of vital concern for her, for the rest of her life." (Id.

¶ 120.) "Such baseless threats strike at the heart of [Morrison's] freedom of speech and expression

under the First Amendment." (Id. ¶ 122.) As such, Morrison seeks "a declaration recognizing

[her] broad and constitutionally-protected right to truthfully tell her own life story, in her own way,

without the constantly overhanging—and thus chilling—threat, in violation of her ongoing First

Amendment rights, of meritless but potentially costly and repetitive litigation into the future." (Id.

¶ 129.)

## II.     Procedural History

On November 1, 2018, proceeding under the Declaratory Judgment Act ("DJA"), Morrison

initiated this action against Langrick, seeking a declaration (1) that Langrick does not have a

meritorious slander action against her based on the 2018 phone call to Bloomberg; (2) that

Langrick's proposed Settlement Agreement is unenforceable and unconscionable; and (3) "of her

rights going forward, in particular her First Amendment right to speak and to write—uncensored—

about her personal story of abuse."  (D.E. # 1 ("Compl.") ¶¶ 97–99.)  On December 21, 2018,

Langrick filed an answer and counterclaim complaint alleging two counts of libel and one count

of slander.  (D.E. # 14 ("Counter Compl.") ¶¶ 256–303.)  On July 29, 2019, this Court denied

Morrison's motion to dismiss Langrick's counterclaims.  (D.E. dated July 29, 2019.)

On February 18, 2020, the Court held a pre-motion conference on Langrick's anticipated

motion for judgment on the pleadings.  (See D.E. dated Feb. 18, 2020.)  At the pre-motion

conference, counsel for Morrison agreed that the first claim for relief was moot based on the

Court's denial of Morrison's motion to dismiss the slander counterclaim. (See D.E. # 85-2 ("PMC

Tr.") at 8:25–9:11.)  As to the second claim for relief, the Court asked plaintiff's counsel, "why is

it that I should declare a proposed settlement, unenforceable and unconscionable?  No one signed

a settlement agreement, so why am I doing that?"  (Id. at 10:9–11.)  Plaintiff's counsel replied that

"most of the terms of that proposed NDA are still being pursued by Mr. Langrick.  So that relates

intimately to the issue of declaratory judgment on the general First Amendment claim."  (Id. at

11:5–8.)  As to the third claim for relief, the Court asked plaintiff's counsel: "Without knowing

what [Morrison] intends to say [in telling her life story], how could I determine, for instance, that

she can say that and there might not be some slander or something in there in telling that personal story of abuse?" (Id. at 11:14–17.)  Plaintiff's counsel replied, "If [Morrison] . . . goes out and writes her book and has someone like me vet[] [it], she will probably not be writing anything that could be defamatory, but that remains to be seen." (Id. at 13:4–7.)  The Court permitted plaintiff's counsel to file an amended complaint if plaintiff's counsel "believe[d] that [he] c[ould] have a complaint that is clearer and more straightforward." (Id. at 17:18–19:12.)

On March 10, 2020, Morrison filed an amended complaint, which withdraws the first cause of action from the original complaint (regarding the slander action) and seeks a declaration (1) that "the 'settlement' terms [Langrick] has previously demanded, is currently demanding, and has refused to say he will not continue to demand or to seek in the future" are unenforceable and violate Morrison's First Amendment rights and (2) that Morrison has a "broad and constitutionally protected right to truthfully tell her own life story, in her own way, without the constantly overhanging—and thus chilling—threat, in violation of her ongoing First Amendment rights, of meritless and potentially costly and repetitive litigation in the future." (Am. Compl. ¶¶ 128, 129.)

## STANDARD OF REVIEW

"A district court properly dismisses an action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).  A court evaluating a motion to dismiss under Rule 12(b)(1) must "accept[] as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003).

A party seeking relief under the DJA bears the burden of showing "that there is an 'actual controversy,' 28 U.S.C. § 2201(a), defined as one that is 'real and substantial . . . admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Weiner v. McKeefery, 90 F. Supp. 3d 17, 43–44 (E.D.N.Y. 2015) (alteration in original) (quoting E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 177 (2d Cir. 2001)). Courts "cannot adjudicate conjectural or hypothetical cases or controversies," nor can the controversy be "a mere possibility or probability that a person may be adversely affected in the future." U.S. Underwriters Ins. Co. v. Kum Gang, Inc., 443 F. Supp. 2d 348, 352 (E.D.N.Y. 2006) (citations omitted). Rather, the "disagreement [between the parties]. . . must have taken a fixed and final shape." Id. (second alteration in original) (internal quotation marks omitted). Plaintiffs seeking declaratory relief must show they meet the jurisdictional requirements at the time the case is heard. Id. (citation omitted).

## DISCUSSION

Langrick argues that both grounds for relief in Morrison's amended complaint are nonjusticiable and should be dismissed, with prejudice, for lack of subject matter jurisdiction. (See generally D.E. # 85-1 ("Langrick Br."); D.E. # 86 ("Langrick Reply").) Morrison argues that her amended complaint presents a justiciable controversy; that declaratory judgments are especially warranted when First Amendment rights are at stake; and that at the very least, the Court should delay its justiciability determination until after discovery is completed on Langrick's counterclaims. (See generally D.E. # 87 ("Morrison Opp'n.").) The Court considers the various arguments herein.

I.       **Justiciability of Claims**

A. **Morrison's First Claim for Relief**

Morrison seeks "a declaration that the 'settlement' terms [Langrick] has previously demanded, is currently demanding, and has refused to say he will not continue to demand or to seek in the future, are unlawful, unconscionable, unenforceable and unconstitutional, in clear and <u>current</u> violation of [Morrison's] First Amendment rights." (Am. Compl. ¶ 128 (emphasis in original).) Langrick argues that Morrison's first claim for relief "is simply a repackaging of Count II of the Original Complaint, which asked the Court to issue a declaratory judgment as to the enforceability of a proposed, draft settlement agreement that nobody contended was a valid contract." (Langrick Br. at 8.) Langrick adds that "[n]ot only is Ms. Morrison still asking the Court to rule on the enforceability of that draft, proposed contract, but she now claims that M[r]. Langrick has an 'apparent plan' to possibly ask Ms. Morrison to sign a similar agreement in the future, and she asks the Court to also prospectively declare that this <u>imagined, nonexistent, hypothetical future contract</u> would also be 'unconscionable' and 'unenforceable.'" (<u>Id.</u> at 9 (emphasis in original).)

It is undisputed that the original Settlement Agreement proposed by Langrick is now off the table. Indeed, Morrison herself alleges in her amended complaint that on May 18, 2018, she, through counsel, "outlin[ed] the reasons why [she] was reject[ing] Mr. Langrick's threats and demands" and that she would "never trade away her right to truthfully recount the facts of her life." (Am. Compl. ¶ 102.) "[C]ourts may not entertain actions for declaratory judgment 'when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action.'" <u>Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.</u>, 890 F. Supp. 2d 398, 403

8

(S.D.N.Y. 2012) (quoting <u>Flast v. Cohen</u>, 392 U.S. 83, 95 (1968)).  As such, courts may not rule on the potential enforceability of an unexecuted contract.  <u>See</u> <u>Tasini v. N.Y. Times Co.</u>, 184 F. Supp. 2d 350, 356–57 n.6 (S.D.N.Y. 2002) (finding the argument "that a freelance writer who has no intention of signing [a contract] has as much standing to challenge it as one who does sign it" to be "at odds with the long-standing prohibition against courts rendering advisory opinions").

Perhaps recognizing that the rejected Settlement Agreement cannot serve as the basis for declaratory relief, Morrison asks the Court for a declaration that the terms Langrick "is currently demanding," and may demand in the future, are unconscionable and unconstitutional.  (<u>See</u> Am. Compl. ¶ 128.)  In support of this allegation, Morrison alleges that Langrick has a "plan in connection with his three defamation counterclaims . . . to silence [Morrison] from truthfully recounting her story into the future," as evidenced by his refusal at his deposition "to respond directly to questions concerning his plans for future litigation against Ms. Morrison." (Am. Compl. ¶¶ 115, 117.)  However, the fact that Langrick may, at some point in the future, seek an agreement that would "silence" Morrison is not an issue on which the Court may opine based on the allegations in the amended complaint.  <u>See</u> <u>Dow Jones & Co. v. Harrods Ltd.</u>, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002) (noting courts may not "gratuitously render[] advisory opinions with regard to events in dispute that have not matured to a point sufficiently concrete to demand immediate adjudication and thus that may never materialize as actual controversies"), <u>aff'd</u>, 346 F.3d 357 (2d Cir. 2003).  The Second Circuit has long held that "[t]he difference between definite, concrete, and substantial controversies which are justiciable, and hypothetical, abstract, or academic ones which are not justiciable, is one of degree, to be determined on a case by case basis."  <u>Muller v. Olin Mathieson Chem. Corp.</u>, 404 F.2d 501, 504 (2d Cir. 1968).  Here, the Court has no trouble concluding that Langrick's alleged "plan" to silence Morrison for the rest of her

life, as evidenced by his bringing counterclaims and his refusal to discuss his future litigation strategy in his deposition, "remains a mere possibility, or even probability of some contingency that may or may not come to pass." Dow Jones & Co, Inc., 237 F. Supp. 2d at 407.  As such, Morrison's first claim for relief is dismissed for lack of subject matter jurisdiction.

### B.  Morrison's Second Claim for Relief

Morrison's second claim for relief seeks "a declaration recognizing [her] broad and constitutionally-protected right to truthfully tell her own life story, in her own way, without the constantly overhanging—and thus chilling—threat, in violation of her ongoing First Amendment rights, of meritless but potentially costly and repetitive litigation into the future." (Am. Compl. ¶ 129.)  Langrick argues that Morrison's second claim for relief fails because the DJA may not be used to seek a preemptive declaration of non-liability, nor can it be used for a declaration that "undefined and unknowable future statements are not defamatory." (Langrick Br. at 13–18.)

In general, the DJA "is not intended to be used by parties who seek a declaration of non-liability to preemptively defeat tort claims." John Wiley & Sons, Inc. v. Visuals Unlimited, Inc., No. 11-CV-5453 (CM), 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011).  That general rule has been applied with equal force in defamation claims. See Dow Jones & Co., Inc., 237 F. Supp. 2d at 418 (declining "to apply the DJA as a defensive shield, a preemptive means to immunize a litigant from the inevitable costs and inconveniences attendant to any form of potential litigation arising from the party's alleged wrongful acts").  Furthermore, the DJA "should not be used to advise 'what the law would be upon a hypothetical state of facts.'" Bruce Winston Gem Corp. v. Harry Winston, Inc., 2010 WL 3629592, at *5 (S.D.N.Y. Sept. 16, 2010) (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)).  Defamation cases in particular are highly fact and context dependent. See, e.g., Goldman v. Reddington, No. 18-CV-3662 (RRM)(ARL), 2019

WL 4736803, at *5 (E.D.N.Y. Sept. 27, 2019) (noting "context is central to [defamation] analysis"); Brahms v. Carver, 33 F. Supp. 3d 192, 198 (E.D.N.Y. 2014) ("The upshot is that context is key.").

Morrison's second claim for relief seeks a declaration that would be both a preemptive immunization from a future defamation claim and would require the Court to say "what the law would be upon a hypothetical state of facts," MedImmune, 549 U.S. at 127. In other words, this Court cannot grant a blanket declaration that allows Morrison to "tell her own life story, in her own way," whatever that may mean, at some unidentified point in the future. As such, Morrison's second claim for relief is dismissed for lack of subject matter jurisdiction.

### C. Morrison's Arguments

In her opposition motion, despite having the burden to demonstrate that the Court has subject matter jurisdiction, Weiner, 90 F. Supp. 3d at 43–44, Morrison does not explain why her claims, as amended, present justiciable controversies. Instead, Morrison spends three pages of her brief explaining why "the never-withdrawn demand for the NDA – along with the unexercised threat of defamation litigation" made the original complaint justiciable. (Morrison Opp'n at 8–10.) In addition to the fact that Morrison's counsel conceded at the pre-motion conference that the NDA issue was moot, (PMC Tr. at 8:25–9:11), and that Morrison alleges in the amended complaint that she rejected the proposed NDA, (Am. Compl. ¶ 102), the amended complaint—not the original complaint—is now the operative pleading in this case, see In re Crysen/Montenay Energy Co., 226 F.3d 160, 162 (2d Cir. 2000) ("It is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect."). The Court therefore disregards Morrison's arguments about the justiciability of the original complaint.

Next, Morrison purports to argue that the amended complaint presents a justiciable controversy.  However, instead of addressing Langrick's arguments about the substance of the amended complaint, Morrison merely distinguishes cases cited in Langrick's opening brief, without explaining why any of the details she pulls out support her theory of the case.  (See Morrison Opp'n at 10–13.)  Morrison also argues that Langrick's assertion of counterclaims does not "mandate dismissal of the DJ plaintiff's underlying claims."  (Id. at 14.)  Langrick does not make that argument, nor does the Court rely on it in its holding.

Morrison also argues that the Court should find her claims justiciable because of alleged First Amendment implications.  (See id. at 13, 15–17.)  Morrison does not cite any cases between private individuals in which the court found it should be "easier to satisfy the threshold of justiciable controversy when the declaratory judgment action implicates First Amendment rights."  (See Morrison Opp'n at 13, 15 (citing Zwickler v. Koota, 389 U.S. 241 (1967) (action for declaratory relief against state statute); Nat'l Student Ass'n v. Hershey, 412 F.2d 1103 (D.C. Cir. 1969) (action for declaratory judgment voiding the "Hershey Directive," which threatened anti-war protestors with loss of their draft deferments); Wolff v. Selective Serv. Local Bd. No. 16, 372 F.2d 817 (2d Cir. 1967) (action against local selective service boards to return student deferments that were revoked after plaintiffs participated in an anti-war demonstration)).  To the extent Morrison is arguing that Langrick's apparent plan to silence her, by using the courts, violates her First Amendment rights, that argument also fails.  Although it is true that the First Amendment may be relevant to a defamation action insofar as it "protects certain defamatory speech and thus may provide a defendant a defense to liability," Fowler v. Am. Lawyer Media Inc., 46 F. App'x 54, 54 (2d Cir. 2002), the First Amendment does not entitle Morrison to a declaratory judgment "to lift the cloud that has been cast over her plans to write about her experiences," (Morrison Opp'n

at 6).[1]  As to Langrick's pending counterclaims, Morrison is free to assert a First Amendment

defense to liability.  As to claims Langrick may bring against Morrison in the future, for the reasons

described above, the Court cannot adjudicate those claims at this time.

Lastly, Morrison asks the Court to defer ruling on Langrick's motion to dismiss until the

close of discovery, arguing that by "pressing this motion now, Mr. Langrick is attempting to

prevent this Court from understanding the full scope of this case against Ms. Morrison, and the

palpable threat of potential future cases or other repressive gambits, whose undoubted purpose will

be to continue to silence her – if possible for the rest of her life."  (Morrison Opp'n at 17–18.)

However, as explained above, it is Morrison's burden to demonstrate that the Court has subject

matter jurisdiction to hear her claims.  Because she has not met that burden, the amended complaint

is dismissed.

## II.      Leave to Amend

Langrick argues that dismissal of Morrison's claims should be with prejudice because she

"has already had an opportunity to amend her complaint and has again failed to assert remotely

justiciable claims."   (Langrick Br. at 18.)   Morrison does not address this argument in her

opposition.  (See generally Morrison Opp'n.)

 Morrison is represented by able counsel and has already had an opportunity to amend her

complaint once.  This opportunity came after Morrison had heard, at the pre-motion conference, a

preview of Langrick's arguments in support of dismissal, as well as the Court's concerns about the

justiciability of her claims.  (See generally PMC Tr.)  For the reasons outlined above, Morrison

failed to assert justiciable claims in the amended complaint.  Because it appears that any further

---

[1] Although he is correct that the First Amendment does not salvage Morrison's amended complaint in this case, Langrick's contention in his reply brief that the First Amendment has no relevance because Langrick is not a state actor, (see Langrick Reply at 11), is overbroad.

amendment would be futile, Morrison's amended complaint is dismissed with prejudice.  See, e.g., Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007) (holding a plaintiff is "not entitled to an advisory opinion from the Court informing [her] of the deficiencies in the complaint and then an opportunity to cure those deficiencies" (internal quotation marks omitted)); Treppel v. Biovail Corp., No. 03 Civ. 3002(PKL), 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (finding "leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless").

## CONCLUSION

For the reasons stated above, Langrick's motion to dismiss Morrison's amended complaint is GRANTED with prejudice.

SO ORDERED.

Dated: July 9, 2020
      Brooklyn, New York                      ___/s/ Carol Bagley Amon_____
                                       Carol Bagley Amon
                                       United States District Judge